UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMIT KUMAR,<br><br>               Petitioner,<br><br>   v.<br><br>ICE FIELD OFFICE DIRECTOR,<br><br>               Respondent. | CASE NO. 2:22-cv-00033-JHC-BAT<br><br>**REPORT AND RECOMMENDATION** |

Petitioner seeks 28 U.S.C. § 2241 habeas corpus relief from immigration custody. He requests the Court order his release or order Respondent to provide a second bond hearing. Dkt. 1 at 2, 6. Respondent filed a return and motion to dismiss, arguing the Court should deny relief and dismiss the habeas petition, because Petitioner is lawfully detained. Dkt. 7. For the reasons below, the Court recommends the Respondent's motion to dismiss (Dkt. 7) be **GRANTED**, the petition (Dkt. 1) be **DENIED**, and the case be **DISMISSED** with prejudice.

## BACKGROUND

**A. Case History**

In January 2022, Petitioner filed a § 2241 habeas petition seeking immediate release or a second bond hearing before an immigration judge (IJ). He alleges he has been detained at the Northwest Detention Center since December 5, 2019, dkt. 1 at 1, and should be released under 8

REPORT AND RECOMMENDATION - 1

1  U.S.C. § 1226(a), because the IJ erred in denying him bond and his prolonged detention violates

2  due process. *Id*. at 3-5. The petition does not set forth the circumstances surrounding Petitioner's

3  detention. However, Respondent filed a return and motion to dismiss that avers the following.

4  Petitioner is a native and citizen of India. He entered the United States in July 2015 as a

5  visitor permitted to stay in the country until January 15, 2016. Dkt.7, Deering Declaration, and

6  Exhibit 2. Petitioner did not leave the country in January 2016 and instead stayed in violation of

7  law. On December 5, 2019, ICE detained Petitioner based upon an INTERPOL Red Notice from

8  India that indicated Petitioner was a fugitive and had allegedly embezzled money from a school

9  in India. *Id.* Deering Declaration.

10 On December 12, 2019, the Department of Homeland Security (DHS) initiated removal

11 proceedings. *Id.* In response, Petitioner applied for asylum. Dkt. 7, Exhibit 4. An IJ held an

12 evidentiary hearing in August 2020, sustained Petitioner's removability and denied the asylum

13 claim. *Id.* Exhibit 5. Petitioner appealed to the Board of Immigration Appeals (BIA) and the

14 appeal was dismissed on January 6, 2021. *Id*. Exhibit 7. Petitioner appealed to the Court of

15 Appeals for the Ninth Circuit and a temporary stay, still in place, was issued. *See Kumar v.*

16 *Garland*, 9th Cir. No. 21-70232.

17 Petitioner also requested a bond hearing. The bond hearing, scheduled for January 21,

18 2020, was cancelled after Petitioner withdrew his hearing request. Dkt. 7, Deering Declaration.

19 In July 2021, Petitioner requested another bond hearing. The IJ conducted a bond hearing on

20 August 31, 2021 and issued an order on September 24, 2021 denying release. Dkt. 7, Exhibit 9.

21 Respondent avers the IJ conducted the bond hearing under *Aleman Gonzalez v. Barr*, 955 F.3d

22 762 (9th Cir. 2020), which applies to individuals detained under 8 U.S.C. § 1231(a)(6), because

23 Petitioner was detained with an administratively final order of removal for more than six months

without a bond hearing before an IJ.[1] *Id.*

The IJ found DHS met its burden to show by clear and convincing evidence that Petitioner was a flight risk because he faces criminal charges in India. Dkt. 7, Exhibit 11 at 1. Petitioner denied knowing about the charges and claimed they are false. *Id.* The IJ noted while Petitioner has family members in the United States, Petitioner is wanted in India for serious crimes, has little incentive to surrender himself and return to India, and is a poor bail risk. Petitioner appealed the IJ's denial of bond to the BIA and the appeal remains pending. *Id.*

### B. Immigration Law Framework

The Immigration and Nationality Act (INA) authorizes the detention of aliens during immigration proceedings. *See* 8 U.S.C. §§§§ 1225(b), 1226(a), 1226(c), and 1231(a). "[T]hese statutes apply at different stages of an alien's detention." *Diouf v. Mukasey*, 542 F.3d 1222, 1228 (9th Cir. 2008) (*Diouf I*). "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008).

Section 1225(b)(1) and (b)(2) authorize the government "to detain certain aliens seeking admission into the country[.]" *Jennings v. Rodriguez*, 138 S. Ct. 830, 838 (2018). Under §§ 1226(a) and (c), the government can detain "aliens already in the country pending the outcome of

---

[1] In *Aleman Gonzalez*, the Ninth Circuit reaffirmed its prior holding in *Diouf v. Napolitano* ("*Diouf II*"), 634 F.3d 1081, 1082 (9th Cir. 2011), that noncitizens subject to prolonged detention under § 1231(a)(6) are entitled to a bond hearing if removal is not imminent. 955 F.3d 762. The Court notes that Respondent appears to aver that at the time of the bond hearing Petitioner was in fact detained under 8 U.S.C. § 1226(a) but that he was afforded a bond hearing pursuant to *Aleman Gonzalez*, wherein the burden was placed on the government to show by clear and convincing evidence that the Petitioner was a flight risk or a danger to the community in order to justify denial of bond. *Id.*; Dkt. 7 at 6.

REPORT AND RECOMMENDATION - 3

removal proceedings." *Id*. Section 1231(a), "authorizes the detention of aliens who have already been ordered removed from the country." *Id*. at 843.

Petitioner contends and Respondent agrees 8 U.S.C. § 1226(a) governs this case. *See* Dkts. 1 and 7. Here Petitioner's removal has been stayed by the Court of Appeals. When an alien's removal is stayed pending judicial review, the alien is detained under the Attorney General's discretionary authority under 8 U.S.C. § 1226(a). *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 951 (9th Cir. 2008); *Prieto-Romero v. Clark*, 534 F.3d 1053, 1065-66 (9th Cir. 2008). The government retains the authority to detain aliens held under § 1226(a) while their cases are stayed pending appeal to the Ninth Circuit because they face a significant likelihood of removal once the judicial and administrative review process is complete. *Casas-Castrillon,* 535 F.3d at 948.

When an alien is detained under § 1226(a), ICE makes an initial custody determination, including the setting of bond. *See* 8 C.F.R. § 236.1(c)(8). After the initial custody determination, the detainee may request a bond redetermination by an IJ. 8 C.F.R. § 236(d)(1). At the bond redetermination hearing, the detainee has the burden to show release on bond is warranted. *See In re Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006). In making a bond decision under § 1226(a), an IJ must consider whether the detainee "is a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." *Id.* (citing *In re Patel*, 15 I. & N. Dec. 666 (B.I.A. 1976)).

An IJ may consider other discretionary factors not limited to but including: (1) whether the detainee has a fixed address in the United States; (2) the detainee's length of residence in the United States; (3) the detainee's family ties in the United States, and whether they may entitle the detainee to reside permanently in the United States in the future; (4) the detainee's

REPORT AND RECOMMENDATION - 4

employment history; (5) the detainee's record of appearance in court; (6) the detainee's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the detainee's history of immigration violations; (8) any attempts by the detainee to flee persecution or otherwise escape authorities; and (9) the detainee's manner of entry to the United States. *Id.*

Due process requires such aliens subject to prolonged detention be afforded an individualized bond hearing before an immigration judge, at which the government has the burden to prove by clear and convincing evidence that the alien is a flight risk or a danger to the community to justify denial of bond. *Singh*, 638 F.3d at 1203.

If, after the bond hearing, the IJ denies bond, the detainee may appeal to the BIA. 8 C.F.R. §§ 236.1(d)(3), 1003.19(f). If the BIA affirms the IJ's decision, the detainee may seek habeas relief from the district court. *Leonardo v. Crawford*, 646 F.3d 1157, 1159-61 (9th Cir. 2011); *Sun v. Ashcroft*, 370 F.3d 932, 941 (9th Cir. 2004).[2] Federal district courts have habeas jurisdiction to review bond hearing determinations for constitutional claims and legal error. *Id.*

---

[2] The Ninth Circuit has held that the proper procedure to challenge an IJ's bond determination is to appeal to the BIA, wait for the BIA to render its decision, and then file a habeas petition in the district court. *Leonardo*, 646 F.3d at 1159-61. The exhaustion requirement, however, is prudential, rather than jurisdictional. *Singh v. Holder*, 638 F.3d 1196, 1203 n.3 (9th Cir. 2011). Therefore, it may be waived. *See Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007). When deciding whether to require prudential exhaustion, courts consider whether "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Id.* (quoting *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)). Even if these factors weigh in favor of prudential exhaustion, waiver of exhaustion may be appropriate "where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (quoting *S.E.C. v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 (9th Cir. 1981)).

REPORT AND RECOMMENDATION - 5

1  at 1202. However, an IJ's discretionary judgment may not be judicially reviewed. 8 U.S.C. § 1226(e).

In this case, Petitioner has been afforded a bond hearing and seeks either reversal of the IJ's decision denying release or another bond hearing. An alien such as Petitioner may be granted a second bond hearing if circumstances have materially changed since the prior bond determination. *See* 8 C.F.R. § 1003.19(e). Also, until recently, Ninth Circuit law required aliens detained under § 1226(a) to be provided automatic bond hearings every six months at which the government was required to justify continued detention by clear and convincing evidence. *Rodriguez v. Robbins*, 804 F.3d 1060, 1084-85, 1087 (9th Cir. 2015) ("*Rodriguez III*"), *rev'd sub nom Jennings v. Rodriguez*, 138 S. Ct. 830 (2018).

The Supreme Court reversed, explaining the Ninth Circuit had misapplied the canon of constitutional avoidance and "[n]othing in § 1226(a)'s text . . . even remotely supports the imposition of" periodic bond hearings where the government bears the burden. *Jennings*, 138 S. Ct. at 847. The Supreme Court did not decide whether the Constitution requires such periodic hearings and remanded to the Ninth Circuit for consideration of that question.[3]

Although the Supreme Court has held an alien has no right to automatic periodic bond hearings under § 1226(a), extended detention can raise due process concerns. "Due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (internal citation and quotation omitted). To determine what due process requires, courts consider (1) the private interest affected, (2) the government's interest, and (3) the value added by alternative procedural safeguards to what has already been

---

[3] The Ninth Circuit subsequently remanded to the district court. *Rodriguez v. Marin*, 909 F.3d 252 (9th Cir. 2018) ("*Rodriguez IV*").

REPORT AND RECOMMENDATION - 6

provided in the particular situation before the court. *Id.* at 334-35; *see also Lopez Reyes v. Bonnar*, 362 F. Supp. 3d 762, 775 (N.D. Cal. 2019) ("In the absence of binding authority establishing a categorical right to a periodic bond hearing, the Court must conduct an individualized due process analysis pursuant to the conventional [*Mathews*] factors.") (internal quotation marks omitted); *Madrigal v. Nielsen*, No. 18-843, 2018 WL 4732469, at *3 (W.D. Wash. Aug. 31, 2018), *Report and Recommendation adopted*, 2018 WL 4700552 (W.D. Wash. Oct. 1, 2018) (applying *Mathews* due process analysis to determine whether due process required subsequent bond hearing).

**DISCUSSION**

Petitioner's § 2241 petition does not set forth facts in support of his claim for relief. Instead, he presents his arguments in his reply to Respondent's return and in exhibits and supplemental materials. *See* Dkts. 9, 10 and 11. In his March 5, 2022 reply, Petitioner argues he was arrested and detained because of the INTERPOL Red Notice; there is no evidence a Red Notice was filed in India and he is innocent of any crimes in India; he has strong ties to the United States including a child who is a U.S citizen; he is not a flight risk; he has health problems such as high blood pressure and type II diabetes making him vulnerable to COVID-19 while in detention; the IJ who denied him release after the August 2021 bond hearing ignored the requirements of *Aleman*, his arguments for release, rushed the hearing and did not take all evidence Petitioner proffered. *See* Dkt. 9 and supporting documents at Dkt. 10.

Petitioner also filed a "supplement" on March 25, 2022 indicating his lawyer in India has filed a petition in the Indian High Court contesting the Red Notice that was issued based upon an "order dated 22.5.2017 . . . whereby the petitioner was declared as proclaimed offender in cases having FIR No. 15 . . . at Police Station Khamanon, District Fatehgarh Sahib." *Id.*

REPORT AND RECOMMENDATION - 7

1        In short, Petitioner argues he should be released or provided another bond hearing because: 1) the IJ erred in denying release; 2) Petitioner's lengthy detention violates due process; and 3) the conditions of his confinement do not adequately address the impact of COVID-19.

       Respondent argues the Court should deny relief because Petitioner has failed to show a material change in circumstances warrants review; the IJ's discretionary bond determination is not subject to judicial review; Petitioner is not entitled to an automatic bond review hearing; and the length of Petitioner's detention does not violate due process under the *Mathews* factors. Dkt. 7.

       Turning to the parties' positions, Petitioner first argues the IJ erred in denying release. In September 2021, after conducting a bond hearing, the IJ issued a decision denying release. The IJ found DHS showed by clear and convincing evidence Petitioner is a flight risk. Dkt. 7, Exhibit 11 at 1. The IJ indicated he has the discretion to consider unlimited factors including immigration history, criminal record, ties to the country, employment, and length of time in the country. *Id.* at 2. The IJ found Petitioner is 45 years of age, entered the country in July 2015 and then overstayed his visa. *Id.* Petitioner's application for asylum and related protections were denied and Petitioner was ordered removed to India on August 4, 2020. *Id.* The BIA dismissed Petitioner's appeal of this order and Petitioner has appealed to the Ninth Circuit Court of Appeals. *Id.*

       The IJ noted Petitioner has no criminal history in this country but is the subject of "an Interpol Red Notice from his country." *Id.* The Red Notice avers a warrant for Petitioner's arrest has been issued by a judge in India and Petitioner faces charges of embezzlement from a public school and for falsifying documents. *Id.* The Notice further alleges Petitioner used some of the

proceeds of his criminal conduct to fund his travel to the United Sates and India is willing to extradite Petitioner. *Id.* at 3.

The IJ indicated Petitioner filed evidence in support of his bond including a letter from his spouse; a copy of his marriage certificate; a copy of his Indian passport and immigration documents; a list of Red Notices issued in India; a legal opinion from an Indian Attorney regarding the criminal charges pending against Petitioner; an article about Red Notice abuses in some countries but not India and a Wikipedia page about a person named Djit Singh Rana. *Id.*

The IJ also noted Petitioner proffered he was unaware he was charged with crimes when he left India and he applied for asylum years before learning about the Red Notice. *Id.* Petitioner also argued the IJ and BIA wrongly denied his asylum claim, that his detention is wrong because of the impact of COVID-19, and the Red Notice was issued as part of corrupt activities against Petitioner. *Id.* at 3-4. Petitioner further claimed he should be released because he has a spouse, a child who is a citizen of the United States and a sponsor. *Id.* The IJ noted the record contained the sponsor's letter. *Id.*

The IJ considered Petitioner's claim the Red Notice does not exist because it is not listed but noted the evidence Petitioner submitted indicates most Red Notices are not listed. *Id.* The IJ also considered the legal opinion Petitioner submitted disputing the criminal charges but found the opinion does not establish the criminal charges were dismissed or that the warrant for Petitioner's arrest has been quashed. *Id*. at 4.

The IJ considered legal authority Petitioner submitted regarding burdens of proof the IJ should apply. *Id.* at 5. The IJ noted the authority submitted are cases outside this circuit and that the IJ is bound by Ninth Circuit precedent. *Id.*

After considering Petitioner's submissions and arguments, the IJ concluded DHS established by clear and convincing evidence that Petitioner is a flight risk. *Id.* The IJ acknowledged while Petitioner has family and community ties in the United States, there is a final administrative order of removal and relief in the Ninth Circuit is narrow and speculative. *Id.* The IJ found Petitioner is "wanted in India for a serious crime, [Petitioner] has not articulated how his medical condition mitigates his flight risk. [Petitioner] has little incentive to return to court or surrender himself for removal. He is a very poor bail risk." *Id.* The IJ concluded no amount of bond or conditional parole would be sufficient to insure Petitioner's presence and accordingly denied Petitioner's redetermination of custody and ordered him detained without bond. *Id.* at 6.

Petitioner challenges the IJ's bond determination. But the nature of Petitioner's challenge requires the Court to do something it cannot: "second-guess the IJ's discretionary assessment[s]." *Prieto–Romero*, 534 F.3d at 1067. As noted above, federal district courts have habeas jurisdiction to review bond hearing determinations for constitutional claims and legal error, *Singh*, 638 F.3d at 1202, but an IJ's discretionary judgment may not be judicially reviewed, 8 U.S.C. § 1226(e). The IJ's reliance on evidence of Petitioner's Red Notice criminal history or the IJ's credibility findings appear to fall within the IJ's exercise of discretion. The IJ is permitted to make bond determinations "based on any information that is available to [him] or that is presented to him ... by the alien or the Service." 8 C.F.R. § 1003.19(d) (2006). These discretionary judgments relating to detention and denial of bond are unreviewable by courts. 8 U.S.C. § 1226(e); *see also Verdugo–Gonzalez v. Ridge*, 2008 WL 170018, at *3 (S.D.Cal. Jan. 17, 2008) (declining to review IJ's discretionary findings of flight risk and danger to community and property); *Lomeli v. Holder*, 2009 WL 2563514, at *8 (D.Ariz. Aug.18, 2009) (noting

REPORT AND RECOMMENDATION - 10

challenge to IJ's decision to consider and not consider certain evidence are "discretionary decisions by the IJ [that] do not rise to the level of constitutional magnitude" and should be exhausted administratively); *Slim v. Nielson*, 2018 WL 4110551, at *5 (N.D. Cal. Aug. 29, 2018) (holding that the court lacked jurisdiction to review the petitioner's habeas claim because the petitioner did not "challenge the fairness of the bond hearing itself" but instead argued that the IJ erred in weighing the evidence and disagreed with the outcome of the bond process).

The Court notes Petitioner submitted and the ALJ considered the same types of information at the bond hearing that he now presents in support of release. *Compare* Dkt. 7, Exhibit 10, documents submitted by Petitioner's lawyer for bond redetermination with Dkt.10, exhibits Petitioner submitted in this action. Hence there is no material change in circumstance that would support a finding that another bond hearing be ordered at this juncture.

In short, the IJ conducted a bond redetermination hearing at Petitioner's request. The IJ considered Petitioner's written submissions as well as his proffer. Petitioner was afforded a bond hearing and Petitioner puts forth no specific facts or argument to indicate the bond redetermination hearing was constitutionally or structurally flawed. The Court notes that Petitioner's pleadings are not the picture of clarity, but it appears that Petitioner simply disagrees with the IJ's discretionary determination, which does not itself provide the Court with the authority to override the IJ's determination. *See Torres–Aguilar v. I.N.S.*, 246 F.3d 1267, 1271 (9th Cir. 2001). There is also nothing showing a material change in circumstances that supports ordering another bond hearing at this point. To the extent the Petitioner intends to raise a constitutional or legal challenge to the IJ's bond determination, this is not clear from his pleadings and the Court does not construe his pleadings as such.[4] *See* Dkt. 7.

---

[4] The Court notes that even if Petitioner had pled such a constitutional or legal claim here it appears it would have been subject to dismissal without prejudice as unexhausted as his appeal of the IJ's bond

REPORT AND RECOMMENDATION - 11

1       Accordingly, Petitioner's claim that the Court should grant § 2241 relief because the ALJ

2 erred in his discretionary judgment denying bond is not a basis for relief in this Court.

3       Petitioner also argues the Court should release him or provide another bond hearing

4 because of the length of his detention. Respondent contends Petitioner's continued detention does

5 not violate due process under the test articulated in *Mathews v. Eldridge*, 424 U.S. 319, 334

6 (1976). Dkt. 7 at 9.

7       The Court first notes that, in this case, Petitioner's prolonged detention does not entitle

8 him to immediate release. A noncitizen detained under § 1226(a) is entitled to release if he can

9 show that his detention is indefinite within the meaning of *Zadvydas v. Davis*, 533 U.S. 678

10 (2001). *See Prieto-Romero*, 534 F.3d at 1062-63. In *Prieto-Romero*, the Ninth Circuit held that

11 the petitioner's detention was not indefinite because the government could repatriate him to

12 Mexico if his petition for review was unsuccessful. *Id.* Petitioner here does not present any

13 evidence that ICE will not be able to remove him if he is ultimately ordered removed.

14 Accordingly, Petitioner's removal is not indefinite, and he is not entitled to immediate release.

15       Moreover, since 2018, judges in this district have applied the traditional balancing test set

16 out in *Mathews*, to determine whether a subsequent bond hearing is required for § 1226(a)

17 detainees. 424 U.S. 319; *see, e.g., Madrigal*, 2018 WL 4732469, at *3, *Report and

18 Recommendation adopted*, 2018 WL 4700552. *Mathews* requires courts consider: (1) the private

19 interest at stake; (2) the government's interest, including the function involved and the fiscal and

20 administrative burdens that any additional procedural requirements would entail; and (3) the risk

21

22  determination remains pending before the BIA. Dkt. 7, Deering Declaration, Exhibits 11 and 12. If
    Petitioner intends to pursue such a constitutional or legal challenge in a future habeas petition, he must
23  first exhaust his claims at the administrative level, prior to seeking relief in this court, or demonstrate that
    exhaustion should be waived. *See Leonardo*, 646 F.3d at 1159-61; *Puga*, 488 F.3d at 815; *Laing*, 370
    F.3d at 1000.

REPORT AND RECOMMENDATION - 12

of an erroneous deprivation of the private interest at stake through the procedures used, and the probable value, if any, of additional procedural safeguards. 424 U.S. at 335.

"As to the first factor, the private interest at issue here is 'fundamental': freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" *Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (addressing § 1226(a) detainees). Petitioner has been detained since December 2019. Although Petitioner has been detained for a lengthy period, the IJ's denial of bond redetermination was issued in September 2021, just seven months ago. Given the relative recency of this determination, this factor weighs in favor of Respondent's position that another hearing should not be granted at this juncture.

Regarding the second factor, the Government has legitimate interests in Petitioner's continued detention: assuring he will appear if ultimately ordered removed. *See Soto v. Sessions*, No. 18-2891, 2018 WL 3619727, at *4 (N.D. Cal. July 30, 2018) (citing 8 C.F.R. § 236.1(c)(8) (allowing release from detention if noncitizen "is likely to appear for any further proceeding")). However, as other courts have recognized, the key government interest at stake "is not the continued detention of Petitioner, but the government's ability to detain him without a bond hearing." *Zagal-Alcaraz v. ICE Field Office Director*, No. 19-1358, 2020 WL 1862254, at *7 (D. Or. Mar. 25, 2020), *Report and Recommendation adopted*, 2020 WL 1855189 (D. Or. Apr. 13, 2020) (collecting cases). However, given "the minimal cost of conducting a bond hearing, and the ability of the IJ to adjudicate the ultimate legal issue as to whether Petitioner's continued detention is justified," courts have concluded "the government's interest is not as weighty as Petitioner's." *Id*. (quoting *Lopez Reyes v. Bonnar*, 362 F.Supp.3d 762, 777 (N.D. Cal. 2019)).

And lastly as to the third factor, Petitioner has received one bond hearing seven months ago in which the arguments he made to the IJ are very similar to the arguments he makes here.

REPORT AND RECOMMENDATION - 13

Thus, there is a lower risk he has been erroneously detained in contrast to a person in prolonged detention who has never had a bond hearing. Accordingly, the Court finds this factor weighs in Respondent's favor.

On balance, the *Mathews* factors weigh in favor of Respondent and the Court accordingly concludes Petitioner's detention does not violate due process, at this point.

And lastly, Petitioner argues the Court should order his release due to the impact of COVID-19 on the conditions of his confinement. *See* Dkt. 9 at 2-4. Petitioner argues he has Type 2 Diabetes, High Blood Pressure and High Cholesterol and is depressed about being apart from his wife and child. *Id.* at 2-3. Petitioner claims the IJ who denied bond was ignorant of the impact COVID-19 has on immigration detainees. This claim is belied by the IJ's finding Petitioner failed to articulate how his medical condition mitigated his flight risk. Dkt. 7, Exhibit 11 at 5.

Petitioner also argues detainees are in "close quarters," that he has been placed in quarantine when someone tests positive for COVID-19 in the detention center, numerous individuals at the detention center have contracted COVID-19, and one officer passed away. Dkt. 9 at 3-4. He cites the *Fraihat* decision in support. *Id. Fraihat v. U.S. Immigration and Cutoms Enforcement*, 16 F.4th 613 (9th Cir. 2021) addressed a class action by ICE detainees alleging ICE is deliberately indifferent or is acting in reckless disregard of the danger COVID detainees face. The Court of Appeals overturned the preliminary injunction the District Court ordered finding "plaintiffs have not demonstrated a likelihood of success on the merits of their claims" because plaintiff failed to bring individualized claims and also failed to establish ICE committed law violations "on a programmatic, nationwide level." *Id.* at 618.

The need for particularized determinations supported by competent evidence to secure immigration release is consistent with this Court's analysis in *Pimental-Estrada v. Barr*, 458

REPORT AND RECOMMENDATION - 14

F.Supp.3d 1226 (W.D. Wash. 2020). That decision found the immigration detention center failed to address the particular risks the 65 year old[5] petitioner faced in detention, and petitioner's claims were supported by expert health evidence he filed showing "release is 'critically important.'" *Id.* at 1253. The decision was issued soon after the start of the COVID-19 pandemic. Since then, the Court notes, the State of Washington has loosened COVID-19 restrictions based upon the number of cases and reduction in the death rate, the availability of free COVID-19 vaccinations and booster shots, and the development of new anti-viral drugs to treat individuals who contract COVID-19.

Petitioner fails to establish, as the Petitioner in *Pimental-Estrada* did, that COVID-19 is grounds for § 2241 relief. That COVID-19 may affect immigration detainees is not grounds for release. Otherwise, every detainee would automatically be released based upon the existence of COVID, or some other malady. While Petitioner alleges COVID-19 is a serious health risk to him, and that being confined increases his risk of contracting COVID-19, he fails to establish the conditions of his detention violate his constitutional rights. He presents no evidence he has a health condition or frailty the immigration facility has not or cannot address. He presents no evidence that the detention center is not providing detainees with COVID-19 vaccines or failing to provide medical care for those who contract COVID-19. Rather, the record shows the detention facility is attending to Petitioner's medical needs because he, in fact avers, his medical conditions were "diagnosed and treated at Northwest ICE processing center." *Id.* at 2. The Court finds the impact of COVID-19, as presently pled, is not grounds to grant habeas relief in this case.

## CONCLUSION

---

[5] *See Pimental-Estrada v. Asher*, 2:20-cv-00495-RSM-BAT at Dkt. 1 (petition).

Petitioner is a citizen of India and was arrested and detained because an Interpol Red Notice indicating a warrant for his arrest was issued in his home country for crimes including embezzlement. There appears to be no question Petitioner has been charged with crimes in India because he has submitted documents to the Court averring that Petitioner's Indian lawyer is challenging the charges. Seven months ago, the IJ issued a decision after holding a hearing denying release. The Court has no power to second-guess the IJ's discretionary determination. Since that decision there has been no material change in facts. The facts and arguments presented to the IJ are essentially the same facts and arguments presented to this Court.

Moreover, the key reason the IJ denied bail—the Interpol Red Notice and Indian criminal charges—is a fact that was presented and considered by the IJ, and a fact that is unchanged. Petitioner has lodged a challenge in India to the criminal charges which if successful may be a material change to the core reason the IJ denied bail. If Petitioner is successful, the Court assumes he will file another § 2241 petition and assert a material change has occurred.

Although Petitioner has been detained for a lengthy period, due process has not been violated based upon the *Mathews* factors that the Court has considered and applied. The Court notes that Petitioner had a bond hearing in August 2021 and the IJ issued a decision in September 2021. The recency of the bond redetermination cuts against ordering Respondent provide Petitioner another bond hearing at this juncture. However, if Petitioner remains in detention as the months go by, the *Mathews* factors may begin to tip in favor of affording Petitioner another bond hearing.

And lastly, Petitioner's contention he should be released due to COVID-19 is not supported with sufficient evidence establishing that, in his particular case, the detention center cannot care for his health concerns or the conditions of confinement are so egregious that the

REPORT AND RECOMMENDATION - 16

Court must order release. Plaintiff has been in custody since 2019 and there is no indication that he has contracted COVID-19, that if he has contracted it that it affected him to the point the detention facility cannot care for him, or that he has been denied the benefits of COVID-19 vaccines or anti-viral treatment medications. The fact COVID-19 has a world-wide impact on everyone and is obviously of concern to detained individuals is thus not grounds, alone, to order immediate release.

For the foregoing reasons, the Court recommends the Respondent's motion to dismiss (Dkt. 7) be **GRANTED**, the petition be **DENIED**, and the case be **DISMISSED** with prejudice.

## OBJECTIONS AND APPEAL

This Report and Recommendation is not an appealable order. Therefore, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **May 23, 2022.** The Clerk should note the matter for **May 27, 2022**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due.

Objections and responses shall not exceed **ten (10)** pages. The failure to timely object may affect the right to appeal.

DATED this 2nd day of May, 2022.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 17